In Re: Appeal of Theresa McGinnis from the decision of the Langhorne Manor Borough Zoning Hearing Board. Theresa McGinnis, Appellant.

In Re: Appeal of Theresa McGinnis from the decision of the Langhorne Manor Borough Zoning Hearing Board. Langhorne Manor Borough, Appellant.

Argued June 7, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Mindy M. Brook, Moskowitz, Zamparelli & Weiss, P.C.,* for Theresa McGinnis.

*Thomas J. Profy, III, Begley, Carlin & Mandio,* for Langhorne Manor Borough.

OPINION BY JUDGE ROGERS, July 29, 1982:

In these cross appeals, Theresa McGinnis and the Borough of Langhorne Manor seek review of an order of the Court of Common Pleas of Bucks County reversing the decision of the Langhorne Manor Zoning Hearing Board that Ms. McGinnis' use of her property as a group home for elderly persons constituted a violation of the Borough's Zoning Ordinance.

The facts, adduced during four lengthy hearings of the board conducted between January and April, 1980, are largely undisputed. In late June, 1979, Ms. McGinnis purchased a residentially zoned property and related improvements including a large single-family residence located at 401 Station Avenue in Langhorne Manor Borough. Shortly thereafter she began occupancy of the residence together with five elderly persons only one of whom is related to Ms. McGinnis and none of whom are otherwise related to each other.[1] The particular circumstances of the living arrangement of these persons will be described at a later point in this opinion. Within the RA-Residential zoning district here at issue single-family detached homes, religious uses, non-profit educational uses, public recreational uses, and certain accessory and temporary uses are permitted by right. Schools operated for profit, nursing homes, and private recreational uses are prohibited. Section 215 of the zoning ordinance defines the term "family," permitted to occupy a single-family dwelling, as follows:

> One or more persons related by blood, marriage or adoption, and in addition, domestic servants or gratuitous guests thereof; or a group of not more than five persons who need not be so related, and in addition, domestic servants or gratuitous guests thereof, who are living together in a single non-profit dwelling unit

[1] Ms. McGinnis disingenuously testified that a number of her patrons were related to her as "aunts." However, the testimonial evidence failed to support this claim and the board properly found that the only resident related to her was Mr. James McGinnis, the brother of appellant's father. Moreover, it was finally conceded that at least two of the six members of the group were unrelated to the others and Section 215 prohibits any group of greater than five members from residing together if any member of the group is unrelated to the others.

and maintaining a common household with single cooking facilities. A roomer, boarder or lodger shall not be considered a member of the family.

On July 19, 1979, Mr. Max Einenkel, zoning officer and building inspector for the Borough, in response to the complaints of neighbors, who expressed then and at the hearings concern that an unlawful commercial use in the neighborhood would have an adverse effect on surrounding property values, attempted to deliver to Ms. McGinnis at her newly acquired home a copy of a letter written by Thomas J. Profy, III, Esquire, the Borough's solicitor, the contents of which was as follows:

Dear Miss McGinnis:

401 Station Avenue, Langhorne Manor Borough is situate in an RA zoning district in which nursing homes, convalescent homes and related-type facilities are not permitted.

Borough Council for which I am Solicitor has been contacted by various persons within the community who are under the impression that you intend to utilize the subject premises as a nursing home, convalescent home or related-type facilities. It may well be that you do not so intend to use the property but to avoid confusion and hardship upon you if you so utilize the premises and were forced to cease and desist, Borough Council has directed that I bring to your attention the zoning classification of the property and aforesaid limitation upon the use thereof.

Mr. Einenkel was refused entry to the house by Ms. McGinnis' sister and was told to leave the letter described above outside where, he was told, it would be retrieved after his departure. Ms. McGinnis later denied any knowledge of the letter.

On August 9, 1979, Mr. Einenkel again attempted to deliver a letter, dated August 8, 1979, written by himself, to Ms. McGinnis, notifying her that the current use of her property "as a multi-person-boarding, nursing and convalescent home" was in violation of the zoning ordinance and requiring her to immediately cease and desist from such use. Again Mr. Einenkel was met at the door by Ms. McGinnis' sister who first agreed to inform Ms. McGinnis of Mr. Einenkel's presence but who then returned with a Mr. Jack Wilson who stated that Ms. McGinnis was unavailable and had authorized him to accept the letter; whereupon Mr. Einenkel delivered the letter to Mr. Wilson. Ms. McGinnis later testified that Mr. Wilson had been in her employ during the relevant period for the purpose of accomplishing certain repairs but she denied any knowledge of the August 8, 1979, letter.

On October 10, 1979, a criminal citation was issued charging Ms. McGinnis with the illegal "[o]peration of a nursing home or convalescent home for 3 or more individuals who are not related by blood or marriage in the property situate at 401 Station Ave. ..." The citation was received by the appellant on October 16, 1979 and she appealed therefrom to the zoning hearing board where her position was that the residents of 401 Station Avenue constitute a family within the meaning of Section 215 of the zoning ordinance, above quoted, and, in the alternative, that the ordinance is unconstitutional as discriminating against groups of unrelated individuals who desire to reside together and, in any event, that she was entitled to a variance from the zoning strictures on account of the unnecessary hardship that would be caused to her by a literal application of the ordinance provision. The zoning board rejected each of these contentions on the basis, *inter alia*, of the following pertinent factual findings:

7. Shortly after purchasing the subject property at 401 Station Avenue, Theresa McGinnis commenced use of the property as a commercial operation for the residential care of the aged.

8. Theresa McGinnis holds herself out to the public as offering a commercial service by providing residential care of the aged.

9. Theresa McGinnis has established a pattern of charges and regular fees for such services and the same has continued.

10. The operation of a residential home for the aged at 401 Station Avenue is commercial in nature and is a service operated for profit....

....

12. The immediate area of Langhorne Manor in which the subject property is located is exclusively residential.

....

14. The property in question is well suited as a private single family residence and could have been sold as such at the time Theresa McGinnis purchased the property....

....

15. Residing at 401 Station Avenue beside the applicant, Theresa McGinnis, is her uncle and five (5) other individuals with no clear evidence establishing a specific family relationship with the applicant.

The board concluded:

3. Other than her uncle, the individuals residing with Theresa McGinnis are not "family" in the traditional sense and within the first definition of the same found in Section 215 of the [zoning ordinance].

4. The present and proposed use of 401 Station Avenue as a residential home for the elderly is not "a single non-profit dwelling unit"; to the

contrary, it is a commercial operation for profit and therefore the individuals residing with the owner/applicant are not "family" within the second and broader definition found in Section 215.

....

6. Theresa McGinnis has not proved the necessary legal factors which would entitle her to a variance in that no physical conditions peculiar to the particular property cause the unnecessary hardship which is a pre-requisite to a variance.

....

8. The property ... can be fully and reasonably used as a single family residential dwelling in strict conformity with the R.A. Zoning District.

9. Theresa McGinnis has not proved that the Langhorne Manor Borough Zoning Ordinance is unconstitutional either in general or as applied to her.

As we have indicated, the Court of Common Pleas reversed the action of the board holding that the zoning ordinance definition of "family," as applied to the particular circumstances of this case, is unconstitutional. Where, as here, the lower court has taken no additional evidence, review by this Court is directed toward the decision of the zoning hearing board and is limited to a determination of whether the board abused its discretion or committed an error of law, and whether each necessary finding of fact is supported by substantial evidence. *Haverford Township v. Zoning Hearing Board of Haverford Township*, 55 Pa. Commonwealth Ct. 209, 423 A.2d 757 (1980).

We first express our agreement with the board and the trial court that Ms. McGinnis failed to meet her burden to show the unnecessary hardship required to support the grant of a variance from the restrictive

terms of a zoning ordinance. "[A] variance is justified only by the unnecessary hardship that results when physical characteristics peculiar to the property or incompatible neighboring uses make permitted development physically impossible or economically infeasible." *Appeal of American Medical Centers, Inc.*, 54 Pa. Commonwealth Ct. 573, 577, 422 A.2d 1192, 1194 (1980). Here permitted development not only is possible and feasible but has been accomplished. The home occupied by Ms. McGinnis and her "guests" was, prior to their occupancy, used as a single-family dwelling. No physical characteristics peculiar to the property were claimed to exist or were the subject of proof at the hearings before the board. The Borough zoning officer testified that of the approximately twenty properties neighboring that of Ms. McGinnis within a distance of one block, all but two are developed as single-family dwellings; the others being a permitted school and a non-conforming five unit apartment house. It was not claimed that these neighboring uses rendered the existing structure unsalable as a single-family residence and, indeed, Ms. McGinnis testified that in her opinion the house could be sold at a profit even if no zoning relief were granted. The discussion of the Supreme Court in *Best v. Zoning Board of Adjustment*, 393 Pa. 106, 109-110, 141 A.2d 606, 608-609 (1958), affirming the zoning board's refusal to grant a variance to the owner of a large Pittsburgh home containing "twenty-two rooms and seven baths" who desired for economic reasons to convert the edifice to multi-family use, is equally applicable here:

> The contentions of the appellant with respect to the refusal of her request for a variance are without merit and, indeed, are not urged on this appeal. When appellant purchased the Morewood house she knew or should have known of the provisions of the zoning or-

dinance restricting the property to use as a one-family dwelling and of the large expenditures required to maintain and keep up the property. Thus, appellant took the property with the conditions of economic hardship staring her in the face, and she cannot now be heard to complain.... Moreover, as we said in Michener Appeal, 382 Pa. 401, 406-407, 115 A.2d 367 (1955): "The law is well established that a variance may be granted only where a property is subjected to a hardship unique or peculiar to itself as distinguished from one arising from the impact of the zoning regulations on the entire district.".... The financial hardship suffered by the appellant in this case is no different from that endured by the owners of other large homes in the neighborhood.... (Citations omitted.)

Ms. McGinnis has devoted her efforts below and on this appeal chiefly to the contention that the zoning ordinance provision here at issue irrationally and, therefore, unconstitutionally distinguishes between traditional families whose members are related by birth, marriage, or adoption, and which are permitted to reside in a single residential dwelling without limitation as to the number of individual residents, and groups of unrelated individuals which are prohibited from residing together in a Langhorne Manor Borough single family dwelling if their number exceeds five. We are convinced that the decision of the Supreme Court of the United States in *Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974) is controlling with respect to this issue. In *Belle Terre* a zoning ordinance single-family provision materially identical to that here at issue and having the effect of prohibiting the cohabitation of a group of six college students was sustained in the face of a broad constitutional challenge.

No persuasive reason has been offered why a municipality may, as a legitimate exercise of its police power, prohibit six college students from residing together in a single family zone but may not constitutionally prohibit the cohabitation of six unrelated older persons.[2]

----

[2] *Moore v. East Cleveland*, 431 U.S. 494 (1977) relied on by Ms. McGinnis, is not to the contrary. In *Moore* the Court held to be unconstitutional a housing ordinance which had the effect of creating criminal culpability on the part of a grandmother who resided with her son and her two grandsons. Mr. Justice POWELL, writing for the plurality, reasoned that the regulation at issue was unjustifiably intrusive and violative of the protections traditionally afforded to the sanctity of the family. Of *Belle Terre*, Mr. Justice POWELL wrote:

> [O]ne overriding factor sets this case apart from Belle Terre. The ordinance there affected only *unrelated* individuals. It expressly allowed all who were related by "blood, adoption, or marriage" to live together, and in sustaining the ordinance we were careful to note that it promoted "family needs" and "family values." 416 U.S. at 9.... East Cleveland, in contrast, has chosen to regulate the occupancy of its housing by slicing deeply into the family itself. (Emphasis in original.)

*Id.* at 498. The concurring opinions of Mr. Justice BRENNAN and Mr. Justice STEVENS are equally explicit in their reassertion of the viability of *Belle Terre*. *Id.* at 511, 519 n.15. In the instant case the ordinance challenged, like that in *Belle Terre* and unlike that in *Moore*, permits related persons to reside together without limitation and attempts only to regulate the number of unrelated persons who may reside in a single dwelling.

Ms. McGinnis also relies, as did the court below, on two decisions of this court in which it was held that single-family zoning ordinance provisions similar to that here at issue could not prevent unrelated foster children or mentally retarded children from living with an adult couple in a domestic environment intentionally structured under the auspices of agencies of the Commonwealth so as to mirror a traditional nuclear family. *Hopkins v. Zoning Hearing Board of Abington Township*, 55 Pa. Commonwealth Ct. 365, 423 A.2d 1082 (1980); *Children's Home of Easton v. City of Easton*, 53 Pa. Commonwealth Ct. 216, 417 A.2d 830 (1980). In *Hopkins* and

But more importantly, in our judgment, the decision of the board that Ms. McGinnis' enterprise is not permitted in the R.A. Residential District is primarily grounded on the commercial characteristics of that enterprise and the decision must be upheld on that basis. It has long been established beyond peradventure that a municipality may lawfully create residential zoning districts from which all commercial uses are excluded. *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926); *Swade v. Springfield Township Zoning Board of Adjustment*, 392 Pa. 269, 140 A.2d 597 (1958); *Volpe Appeal*, 384 Pa. 374, 121 A.2d 97 (1956); *Ward's Appeal*, 289 Pa. 458, 137 A. 630 (1927). In this context prohibited commercial uses may include frater-

---

*Children's Home of Easton, Belle Terre* was factually distinguished on the grounds that the six unrelated college students there involved did not constitute the equivalent of a nuclear family.

The living arrangement involved in the case *sub judice*, unlike that in *Hopkins* and *Children's Home of Easton*, embodies no permanent commitment on the part of the individual residents. The record here reveals that during the course of the hearings before the board at least one and perhaps two of the residents at Ms. McGinnis' home had gone elsewhere. Each resident is free to leave at any time unfettered by the legal, social and moral bonds—including those bonds created, for example, by a commitment to the task of child rearing—that import greater stability to nuclear families. In sum, each of these cases must turn on its facts and with the exception of the age of the residents, the living arrangement here involved is very much like that of *Belle Terre* and unlikely to be mistaken for a nuclear family.

We have also examined but are unpersuaded by the many authorities of other jurisdictions cited in appellant's brief for the proposition that unrelated individuals must be permitted to reside together despite local zoning ordinance provisions to the contrary. A number of these cases were decided prior to *Belle Terre*, others represent factual circumstances involving, as did *Hopkins* and *Children's Home of Easton*, the equivalent of a nuclear family, others concern issues not here present; for example, whether unmarried couples or members of a religious order may be prohibited from living together.

nity houses, motels, boarding houses, and such institutions as nursing and convalescent homes. *See e.g. Volpe Appeal* at 377, 121 A.2d at 99; *Harrisburg v. Pass*, 372 Pa. 318, 93 A.2d 447 (1953); *Devereux Foundation, Inc., Zoning Case*, 351 Pa. 478, 41 A.2d 744, *appeal dismissed*, 326 U.S. 686 (1945). The validity of the prohibition does not depend, as Ms. McGinnis would have it, on a determination that the proposed commercial use would endanger the public health, safety, or morals of those living in the residential district. *Best v. Zoning Board of Adjustment; Swade v. Springfield Township Zoning Board of Adjustment.*

Therefore, if the board's factual findings concerning the commercial nature of Ms. McGinnis' enterprise are supported by substantial evidence it is clear that the use was properly determined to be prohibited. The evidence on this score was that Ms. McGinnis charges a standard daily rate or fee for room and board of fourteen dollars to those of her patrons who require no nursing services and up to twenty dollars per day for those requiring more extensive care; that she described her operation at 401 Station Avenue as a business, styled the "Theresa McGinnis Residential Home," for purposes of federal income taxation and reported a gross income attributable to the business of $37,330.00 for the taxable year 1979 from which gross income was excluded $25,324.00 for cost of goods sold and operational expenses and $17,261.00 for other deductions including advertising expenses, depreciation, licenses, wages and repairs; and that immediately preceding her arrival in Langhorne Manor Borough Ms. McGinnis had owned and managed a facility of an apparently identical nature in Cornwell Heights, Pennsylvania, styled a "Residential Home for Senior Citizens" on stationery of which was advertised a purpose to "Care for Senior Citizens Daily, Weekly, Week-ends and Perma-

nent Basis" and at which location were housed on the same terms many of the persons later residing at the subject property in the Borough. We cannot say, especially in the light of the complete absence of evidence having a contrary import,[3] that the factors just recited are insufficient to support the board's determination that Ms. McGinnis was engaged in a commercial endeavor designed and intended to be, if not yet realizing that intention, profitable.

Finally, we note that the court below seems to have been persuaded that the services provided by Ms. McGinnis to a number of elderly persons in her community are valuable and in accord with certain statements of policy attributed to the Commonwealth Department of Aging. We do not disagree. The record admits of no conclusion other than that the elderly residents in Ms. McGinnis' charge have benefited

---

[3] Ms. McGinnis, acting on advice of her counsel, resisted throughout the hearings before the board attempts to elicit evidence concerning the nature of her enterprise in the Borough: refusing to answer questions concerning her financial arrangements with those living at the residential home; claiming, without citation to authority, that all such matters are privileged; refusing to produce, despite the failure to obtain a protective order, business records the subject of subpoenas duly issued; and claiming a "banker-client" privilege in an attempt to prevent the testimony of Mr. Ira Wright, Assistant Vice President of the First National Bank and Trust Company of Newtown, with respect to the financial particulars of her purchase of the subject property.

Of course it was the appellant's burden to establish that her use of the property was permitted under the ordinance or that sufficient hardship existed to justify a variance from the ordinance's terms. Here the appellant's intransigence and persistent refusal to cooperate with the fact finding tribunal cannot have been helpful to her cause and, although we do not here face the issue as the findings of the board are adequately supported, we would be inclined to sustain the fact finder in any case where a party who refuses to cooperate or to divulge necessary information properly requested is found to have failed to meet his evidentiary burden.

greatly from her expert care as well as from the companionship and healthful environment her residential home provides. However, as we have earlier emphasized, the issue is not whether Ms. McGinnis ought to be permitted to carry on her useful vocation but whether it is within the power of the municipality to exclude commercial activities from residential zoning districts. The Borough has such power and no more than the proper exercise of such power is here challenged.

In the matter of the Borough's appeal to No. 1137 C.D. 1981, the order below is reversed. The trial court disposed of all of the issues before it by an order which simply sustains Ms. McGinnis' zoning appeal. It will be recalled that the Zoning Hearing Board had also refused Ms. McGinnis' application for a variance for her home and that the trial court, in the course of the opinion in support of its order, rejected her appeal from this action. Although Ms. McGinnis won in the trial court, she filed a cross appeal to save her position with respect to the variance. We affirm the lower court's decision on this issue.

## ORDER

AND Now, this 29th day of July, 1982, in the matter of the appeal of the Langhorne Manor Borough to No. 1137 C.D. 1981, the order below made March 24, 1981 is reversed; in the matter of Theresa McGinnis' appeal to No. 1013 C.D. 1981, from the refusal of a variance, the decision of the Court of Common Pleas of Bucks County is affirmed.