Ollie Owens, Appellant *v.* Zoning Hearing Board of the Borough of Norristown, Appellee.

Argued April 6, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Charles J. King, Jr., Rogers, King & Cole,* for appellant.

*Roderick D. Mathewson,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., December 28, 1983:

Ollie Owens (applicant or owner) appeals from an order of the Court of Common Pleas of Montgomery County affirming a decision of the Zoning Hearing Board of the Borough of Norristown (Board) which denied her permission to use a former single family dwelling as a boarding house.

Applicant owns a three story, five-bedroom building which is used as a boarding home by seven unrelated, adult boarders who participate in Norristown State Hospital's day treatment program. The boarders pay rent for which they receive meals, lodging and use of laundry facilities, but neither personal care nor medical services is provided by the absentee owner or her operator. Significantly, the boarding house is operated for profit and each resident is required to sign a contract with the operator, valid for a thirty day period and renewable thereafter, prior to lodging there.

The boarding house is situate in a residential neighborhood, within the zoned R-2 Single and Two Family Residence District, predominately comprising single family dwellings. Although each family dwelling in the R-2 zone is permitted to have, as an accessory use, up to three rental rooms for roomers or tourists, boarding houses[1] are excluded by the terms of the Ordinance. The Ordinance, however, permits boarding houses in the Borough's central business district by special exception.[2]

---

[1] A "Boarding House" is defined as "[a] dwelling other than a hotel or private club where, for compensation, meals or lodging are provided for three (3) or more guests on a weekly or monthly basis." Section 2300(I).

[2] Section 701(I) authorizes hotel, motel and apartment house uses in the central business district without special exception. Subsection VI of Section 701 then pertinently permits

Before the Board, the applicant sought a special exception or variance to use the property as a residence for not more than eight unrelated persons. The owner also argued that the Ordinance is unconstitutional in that it excludes boarding house uses, not only in residential districts zoned R-2, but throughout the Borough. The Board denied the owner's application and the common pleas court, without taking additional evidence, sustained the Board's order. This appeal followed.[3]

The owner chiefly contends that the Ordinance irrationally and therefore unconstitutionally distinguishes between traditional families (*i.e.*, whose members are related by birth and marriage) which are permitted to reside, and groups of unrelated adults which are prohibited from residing, in dwellings located in the R-2 residential district.

We initially note that zoning classifications are within the legislative domain and that

[o]ne who challenges the constitutionality of a zoning ordinance has no light burden and it is settled that before a zoning ordinance can be declared unconstitutional it must at least be

[t]he following uses when authorized by the Zoning Hearing Board as a spceial exception:

1. Any use of the *same general character* as any of the uses herein before specifically permitted without requirement of a special exception. . . . (Emphasis added.)

Since a boarding house use is a commercial endeavor by definition (*see*, n. 1 *supra*), and has the same general character as hotels, motels and apartment house uses which are permitted in the central business district, we conclude with the common pleas court that boarding house uses are permitted, albeit by special exception, by the Ordinance.

[3] Our scope of review, where the court of common pleas has taken no additional evidence, is to determine whether the Board abused its discretion or committed an error of law. *Appeal of Philadelphia Center for Developmental Services, Inc.*, 76 Pa. Commonwealth Ct. 1, 4, 462 A.2d 962, 964 (1982) (citation omitted).

shown that its provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. If the validity of the legislative judgment is fairly debatable, the legislative judgment must be allowed to control. . . . (Citations omitted.).

*Glorioso Appeal,* 413 Pa. 194, 198, 196 A.2d 668, 671 (1964). Further, it is beyond dispute that the unrelated boarding house residents do not constitute a family within the language of the Ordinance which defines "Family" as

[a]*ny number of individuals related by blood or marriage living together as a single nonprofit housekeeping unit and doing their cooking on the premises,* excluding, however, occupants of a club, fraternity house, lodge, residential club or rooming house. (Emphasis supplied.)

Section 2300(T).

Citing *Hopkins v. Zoning Hearing Board of Abington Township,* 55 Pa. Commonwealth Ct. 365, 423 A.2d 1082 (1980) and *Children's Home of Easton v. City of Easton,* 53 Pa. Commonwealth Ct. 216, 417 A.2d 830 (1980), the owner asserts that her boarding house residents are the functional equivalent of a biologically related nuclear family and therefore cannot constitutionally be excluded from the R-2 residential district. In *Hopkins* and *Children's Home of Easton* we held that single family zoning ordinance provisions could not constitutionally prohibit unrelated foster children or mentally retarded children from living with adult couples in a domestic environment substantially similar to that of the traditional nuclear family.

In contrast to the nurturing, stable, permanent commitments embodied in the living arrangements of *Hopkins* and *Children's Home of Easton,* the adult boarders, *sub judice,* sign a renewable, monthly con-

tract and pay rent for lodging and meals provided by a profit-seeking operator. Additionally each resident is free to leave at any time unencumbered by the social, moral and psychological bonds which, especially during child rearing years, characterize nuclear families. The living arrangements, therefore, of seven unrelated rent-paying, adult individuals residing temporarily in a for-profit boarding house vastly differ from that of the quasi-nuclear families of *Hopkins* and *Children's Home of Easton* and, as such, a different outcome is commanded. *See, Village of Belle Terre v. Boraas,* 416 U.S. 1 (1974) (constitutionality of single family zoning ordinance provision prohibiting the cohabitation of six *unrelated* college students sustained); *McGinnis Appeal,* 68 Pa. Commonwealth Ct. 57, 448 A.2d 108 (1982), *cert. denied.*      U.S.    , 103 S.Ct. 2121 (1983) (municipality may constitutionally limit the number of unrelated elderly persons in a group home in a residentially zoned property although allowing an unlimited number of related persons to reside there).

We believe, therefore, that in light of the factual inappositeness of *Hopkins* and *Children's Home of Easton* and the controlling pertinency of the decision of the Supreme Court of the United States in *Belle Terre* and our decision in *McGinnis Appeal* that the Borough legitimately exercised its police power in prohibiting seven unrelated adults from residing together in a commercial boarding house situate in a single and two family residential district.[4]

---

[4] The record clearly supports the Board's findings concerning the commercial nature of applicant's boarding house where boarders pay rent and sign thirty day term contracts. Thus this commercial endeavor, designed and intended to be profitable, may lawfully be excluded from zoned residential districts so that residential neighborhoods may be preserved and family values permitted to prosper. *See, McGinnis Appeal* at 67-69, 448 A.2d at 113-14.

234

Accordingly, we affirm the order of the common pleas court.[5]

ORDER

AND Now, this 28th day of December, 1983, the order of the Court of Common Pleas of Montgomery County, dated March 1, 1982, is affirmed.

---

[5] The owner also contends that the exclusion of boarding house uses from the R-2 zoned district denies her equal protection of the law in that convalescent homes and sanitoriums are permitted in residential districts by special exception. *See*, Section 402(I)(2). Unfortunately, this argument was first raised on appeal to this Court, and we may not consider any question not first raised before the lower court. Pa. R.A.P. 302(a).