708 P.2d 1317

**BEHAVIORAL HEALTH AGENCY OF CENTRAL ARIZONA (BHACA), a nonprofit corporation, Armond Lusignan and Elderly Persons I–X, Plaintiffs/Appellants,**

v.

**CITY OF CASA GRANDE, a municipal corporation; Hugh N. Guinn, Mayor of the City of Casa Grande; Katherine Y. Kenyon, William Eddings, Willard S. Russ, Riftin Curtis and Steve Pass, City Council Members of the City of Casa Grande, Defendants/Appellees.**

No. 2 CA–CIV 5172.

Court of Appeals of Arizona, Division 2.

Feb. 19, 1985.

Rehearing Denied April 11, 1985.

Review Denied Oct. 29, 1985.

Cole & O'Neil by Mark A. Higgins, Casa Grande, for plaintiffs/appellants.

Michael F. Beers, City Atty., Casa Grande, for defendants/appellees.

OPINION

HOWARD, Judge.

This is an appeal from the granting of a summary judgment in a zoning matter. The record shows that appellants filed for a conditional use permit to allow them to operate a group home for the elderly in an area in Casa Grande zoned for single-family residences. A hearing was held before the planning and zoning commission, and neighboring property owners appeared, vehemently opposing the granting of the permit. The commission denied the application. The decision of the planning and zoning commission was appealed to the city council. The neighbors again appeared and expressed their opposition. The city council unanimously voted to uphold the commission's decision to deny the permit. Appellants then filed a complaint in the Pinal

County Superior Court which appears to be a cross between a special action, an action for declaratory relief, and an action under 42 U.S.C. § 1983. Appellants claim that the city council was arbitrary and capricious in denying the conditional use permit and that the city ordinances are unconstitutional. The record shows the following undisputed facts.

Appellant BHACA is a non-profit corporation designed to render services to persons who have drug problems, persons who have alcohol problems and to elderly persons. Appellants initially applied for a conditional use permit for a group home for juveniles. This application was subsequently withdrawn and later submitted to the city planning department, which recommended approval. However, the planning and zoning commission, after a hearing on the matter, voted to deny it.

Appellants then filed a conditional use permit application on the same property for an elderly group home. The planning and zoning commission again recommended disapproval and a public hearing was held before the city council. According to William Crenshaw, the executive director of BHACA, who spoke at the hearing before the members of the city council, the group home was to provide elderly foster care for up to five elderly persons and would also house two permanent staff members. The clients were to come generally from the Casa Grande area, and although they were not mentally ill they were all in frail physical condition, incapable of independent living, and required 24-hour supervision. Appellants had already leased a house outside the city limits for this elderly foster care program but wanted to also lease a house within the city limits because they had a long waiting list.

The transcript of the hearing before the city council discloses that appellants had created a good deal of animosity in the neighborhood by their failure to talk with the neighbors prior to applying for the conditional use permit for the juvenile facility and prior to applying for the conditional use permit for the elderly group home. This led the neighbors and some members of the city council to be suspicious of the type of home proposed, and some members of the council and the neighborhood believed appellants were not truthful about the proposed use. Their suspicions were reinforced by appellants' refusal to disclose the background of any of the occupants of the proposed group home. It was evident that the neighbors and some members of the city council believed that the home would be occupied by persons with some type of mental or behavioral disorder. The neighbors and some members of the council expressed the thought that they were not opposed to elderly programs but were opposed to group housing in an area zoned for single-family residences. A seeming substantiation of this fear was brought out by one member of the neighborhood who quoted from the Arizona Department of Health Services site report which indicated that appellants were going to develop a new congregate living program in the Casa Grande area where elderly, substance abuse, mental health and other disabled clients would be sharing a living facility.

Appellants contend (1) that the proposed use of the residence as an elderly foster care group home is a permitted use under the City of Casa Grande zoning ordinance; (2) that if the use is not a permitted use, the denial of the conditional use permit was arbitrary, capricious and unreasonable and (3) that if the proposed use is a conditional use rather than a permitted use, the ordinance's classification is arbitrary, capricious, unreasonable and discriminatory, violating appellants' federal and state constitutional rights to equal protection, due process, privacy and freedom of association. We disagree and affirm.

## I.

As we originally noted, the action in the superior court, although not entitled a special action nor an action for declaratory

judgment, was apparently a combination of both and we shall treat it as such. The zoning ordinance of City of Casa Grande defines the word "family" as follows: "Any number of individuals *customarily* living together as a single housekeeping unit and using common cooking facilities." (Emphasis added) The term "group home" is also defined in the zoning ordinance as follows:

"A facility located in a residential area providing shelter and/or rehabilitation of up to eight (8) persons, regardless of age, referred by a government agency or duly licensed social service agency, who for various reasons cannot reside in their family home. 24-hour supervision is mandatory and professional supervision and consultation is available to residents of the home. The purpose of a group home is to provide services for persons who do not need the structure of an institution, but do need a transitional environment for future successful reentry into the community as an independent and productive person...."

■ Although appellants never maintained before the city council below that they were entitled to locate their facility in an area zoned for single-family residences because of the fact that the members of the home constituted a "family" within the meaning of the zoning ordinance, they do so now on appeal. If this were merely a special action, this issue could not have been raised for the first time in the trial court since it was not raised before the zoning agency. See *Lippoth v. Zoning Board of Appeals, City of South Portland*, 311 A.2d 552 (Me.1973); *Moyer v. Board of Zoning Appeals*, 233 A.2d 311 (Me.1967); *Bourke v. Foster*, 343 S.W.2d 208 (Mo.1960); *Hickox v. Griffin*, 298 N.Y. 365, 83 N.E.2d 836 (1949); *Application of Enokay, Inc.*, 407 Pa. 593, 181 A.2d 842 (1962); *Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949); *River Forest State Bank & Trust Company v. Zoning Board of Appeals of Maywood*, 34 Ill.App.2d 412, 181 N.E.2d 1 (1961); 101A C.J.S. Zoning and Land Planning § 273, at 807 (1979). However, since we construe this also as an action for declaratory relief, the issue was properly presented in the superior court.

■ Appellants have cited to us many cases from other jurisdictions where the word "family" is defined in various zoning ordinances which would permit a group home such as that proposed by appellants in Casa Grande. We find none of these cases to be persuasive because of the difference between them and the Casa Grande ordinance. Although the Casa Grande ordinance does not require that the persons living in the house be related by blood or be legally related, it does require that the persons "customarily" live together. The word "customarily" means usually, regularly, habitually, according to the custom, general practice, or usual order of things. *Feinberg v. White*, 173 F.2d 585 (5th Cir. 1949); *Jones v. Robertson*, 79 Cal.App.2d 813, 180 P.2d 929 (1947). A group of unrelated elderly persons, whose composition will constantly be changing upon the death or serious injury of its members, and their attendants or supervisors, whose composition will also be changed when needed, do not "customarily" live together. The city ordinance does not limit the composition of the household to the nuclear family, thus allowing the premises to be occupied by an extended family and also recognizing the possibility that other persons may be residing in the residence as a family who are not related. However, we do not believe that the city council intended to allow, for example, a group of prisoners, serving a sentence for life without parole, to live in the single-family residential area just because they happened to be sharing common cooking facilities and living together as a single housekeeping unit. Nor do we believe that the city council intended that the single family residential area could be used by a group of permanently, criminally insane persons who might be living together as a

single housekeeping unit and using common cooking facilities.

As observed by Judge Andersen in *Culp v. City of Seattle*, 22 Wash.App. 618, 590 P.2d 1288 (1979):

"The problem with stretching the definition of the words 'family' and 'home' in the zoning code to achieve that which is felt to be socially desirable (that is, to allow special housing for retarded citizens to be established in single family residential neighborhoods) is that once stretched, the definition may also accommodate that which may not necessarily be so socially desirable, such as mini-prisons, for example.

As the learned judge pointed out in his oral decision, if the Seattle City Council, as the legislative branch of that city's government, considers it appropriate that homes such as are here at issue be established in residential neighborhoods, then the straightforward way of doing this is to amend the city's zoning ordinance to so provide." 590 P.2d at 1290.[1]

■ Appellees contend that appellants' proposed use constitutes a group home. We do not agree. It is evident from the definition of "group home" as contained in the ordinance that a group home is a halfway house. The home for the elderly here was not to be a halfway house. The occupants would not be there for the purpose of future successful re-entry into the community.

■ The record shows that appellants intended to charge the elderly occupants $825 per month if they were able to do so, and if the occupants were declared indigent the county would pay $600 per month. Appellants envisioned that as much as 90 per cent of the income received from the home would come directly from client fees. Article 3 of the zoning ordinance defines a boarding or rooming house as "a building containing a dwelling unit where lodging is provided with or without meals for compensation for five or more persons." We believe that the proposed use is not for a single-family residence, nor for a group home, but for a boarding or rooming house. See *Civitans Care, Inc., v. Board of Adjustment of the City of Huntsville*, 437 So.2d 540 (Ala.Civ.App.1983) which involved a group home for mentally disabled adults where the meals were to be provided to the residents, in most part cooked by staff with help from the residents. The court held that the group home constituted a boarding house and was not a permissible use in a single-family and multi-family dwelling zone.

The trial court did not err in failing to find that the proposed use was for a single-family dwelling.

## II.

■ Appellants contend that the city council acted arbitrarily and capriciously in denying it a conditional use permit as a group home. Appellants have set forth several reasons why the action of the council was arbitrary and capricious. However, none of these reasons are relevant in view of the definition of group home as found in the zoning ordinance. We have previously stated that a group home for which one can receive a conditional use permit in a single-family residential zone is a group home used as a halfway house. As was stated in the case of *Oliver v. Zoning Commission of the Town of Chester*, 31 Conn.Supp. 197, 326 A.2d 841 (1974):

"It is well settled that the conditions permitting the use of property as a special exception must be found in the zoning regulations themselves. [citation omitted] A special exception relates only to such cases as are expressly provided for under the enunciated terms of the zoning regulations. These cases are spelled out in the regulations. It re-

---

1. On the definition of the word "family" as used in zoning ordinances, see 2 R. Anderson, American Law of Zoning §§ 9.29 and 9.30 (2nd ed. 1976).

mains for the zoning authority to determine that the specified facts, circumstances and conditions exist, but the authority has no power to change, vary, or make a substitution for, what the regulations provide shall constitute a special exception." 326 A.2d at 844.

Since the proposed use did not constitute a "group home" as defined in the zoning ordinance, the city council did not act wrongfully in failing to grant the conditional use permit.

### III.

■ Appellants contend that excluding their proposed use from the definition of "family" constitutes a violation of the equal protection clause and of their rights to privacy, freedom of association, and due process under both the United States Constitution and the Arizona Constitution. We do not agree.

A similar challenge was brought against a zoning ordinance in the case of *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). The zoning ordinance in *Village of Belle Terre* was more restrictive than the Casa Grande zoning ordinance and defined "family" as follows:

"The word 'family' as used in the ordinance means, '[o]ne or more persons related by blood, adoption, or marriage, living and cooking together in a single housekeeping unit, exclusive of household servants. A number of persons but not exceeding two (2) living and cooking together as a single house-keeping unit though not related by blood, adoption, or marriage shall be deemed to constitute a family.' " 94 S.Ct. at 1537–38.

In *Village of Belle Terre* a group of unrelated adults, fraternity members, challenged this definition. The United States Supreme Court held that the standard in reviewing a zoning ordinance is the "rational relationship" test. The Supreme Court stated:

"We deal with economic and social legislation where legislatures have histori-cally drawn lines which we respect against the charge of violation of the Equal Protection Clause if the law be ' "reasonable, not arbitrary" ' (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989) and bears 'a rational relationship to a [permissible] state objective.' *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225." 94 S.Ct. at 1540.

The Court further held that the village zoned the area in which the defendant's homes were located as single-family dwellings to provide an area conducive to family life. The Supreme Court specifically stated that this was a legitimate guideline toward a permissible goal. We adopt the United States Supreme Court's reasoning as our own and hold that the Casa Grande zoning ordinance does not violate any clauses of either the federal or state constitutions.

Appellants' contention that the later case of *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) is inconsistent with *Village of Belle Terre* is without merit. The East Cleveland zoning ordinance attempted to limit the definition of "family" to essentially the nuclear family, in other words, the parents and their children. The United States Supreme Court held that the definition of "family" could not be limited so as to exclude grandchildren living with a grandparent. The *Moore* opinion held that the constitution's protection of the sanctity of the family was deeply rooted in the nation's history and to its tradition, and that such tradition was not limited to respect for the bonds uniting the members of the nuclear family but extended as well to the sharing of their households with uncles, aunts, cousins and especially grandparents.

We agree with the observation made by the court in *Appeal of McGinnis*, 68 Pa. Commw. 57, 448 A.2d 108 (1982), cert. den., 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983):

"In *Belle Terre* a zoning ordinance single-family provision materially identical

to that here at issue and having the effect of prohibiting the cohabitation of a group of six college students was sustained in the face of a broad constitutional challenge. No persuasive reason has been offered why a municipality may, as a legitimate exercise of its police powers, prohibit six college students from residing together in a single-family zone but may not constitutionally prohibit the cohabitation of six unrelated older persons." 448 A.2d at 112.

Affirmed.

BIRDSALL, C.J., and HATHAWAY, J., concur.