Marion EICHLIN and Harry L. Eichlin

v.

The ZONING HEARING BOARD OF NEW HOPE BOROUGH and New Hope Borough, Family Services Association of Bucks County, Inc., Bucks Villa, Inc., and Jill Ferrari.

Appeal of Harry L. EICHLIN, Appellant.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.
Decided Feb. 14, 1996.

Jeffrey A. Drake, for Appellants.

Francis J. Sullivan, for Appellee, Family Services Ass'n of Bucks County, Inc. and Bucks Villa, Inc., Louis R. Busico, for Appellee, New Hope Borough.

Before COLINS, President Judge, SMITH, Judge and KELTON, Senior Judge.

COLINS, President Judge.

Harry L. Eichlin (Appellant) appeals an order of the Court of Common Pleas of Bucks County (trial court) that affirmed the decision of the Zoning Hearing Board of New Hope Borough (Zoning Hearing Board) sustaining the New Hope Borough Zoning Officer's (Zoning Officer) decision to grant a zoning permit to Bucks Villa, Inc. (BVI), for the intended use of the subject property as a family group home pursuant to Section 218 of the New Hope Borough Zoning Ordinance (Ordinance).[1]

The property at issue is zoned R–B Urban Residential and is improved by a residential building, which currently consists of two separate dwelling units. Family Services Association of Bucks County (FSA) is a non-profit corporation that is sponsoring BVI, a non-profit corporation that is the equitable owner of the property. BVI c/o FSA proposed to renovate the structure for use as a family group home intended to house eight HIV-infected persons and a residential manager.

On August 3, 1993, BVI applied for a zoning permit and a use and occupancy permit. A zoning permit was issued authorizing BVI c/o FSA to use the property as a family group home; no action was taken on the use and occupancy permit application, as the Borough of New Hope (Borough) reserved

1. New Hope Borough Zoning Ordinance No. 1993–2, art. 1, § 1.

the right to act on the application upon completion of construction. Marion Eichlin, the wife of Appellant, appealed the issuance of the zoning permit to the Zoning Hearing Board, and hearings were conducted on September 30, October 19, and October 26, 1993. On December 2, 1993, the Board issued a decision denying Marion Eichlin's appeal and sustaining issuance of the zoning permit. An appeal to the common pleas court was filed on December 29, 1993.

On July 23, 1994, Marion Eichlin died, and Appellant was subsequently permitted to substitute himself as a successor in interest and/or to intervene in Marion Eichlin's appeal. Appellant's entry into the case was accomplished by stipulation of the parties. FSA, the Borough, and Jill A. Ferrari were also permitted to intervene as parties.

By order of the trial court dated November 1, 1994, the case was remanded to the Zoning Hearing Board for that body to take additional evidence on what is meant by the term "functional equivalent of a traditional family," and to develop a factual record as to whether the proposed facility satisfies that definition. After remand, the trial court affirmed the Zoning Hearing Board, concluding that the Board's findings that the property as renovated is a single-family dwelling and that the residents will live together as the functional equivalent of a traditional family are supported by substantial evidence. This appeal followed.

Appellant raises three issues for our consideration: (1) whether the use proposed by the landowner is the functional equivalent of a traditional family, thereby qualifying said use as a family group home; (2) whether a family group home of more than five (5) members is a permitted use only in detached single family dwellings; and, (3) whether the record, including the Board's decision, establishes that the proposed use will be conducted and/or carried on in something other than a detached single-family dwelling.

■ The trial court took no additional evidence; therefore our scope of review is limited to determining whether the Zoning Hearing Board committed a manifest abuse of discretion or an error of law. *Constantino v. Zoning Hearing Board of the Borough of*

*Forest Hills,* 152 Pa.Cmwlth. 258, 618 A.2d 1193, 1195 n. 2 (1992). A conclusion that the Zoning Hearing Board abused its discretion may be reached only if its findings are not supported by substantial evidence. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The Zoning Hearing Board as fact finder is the ultimate judge of credibility and resolves all conflicts in the evidence. *Constantino.* If the Zoning Hearing Board's findings of fact are based upon substantial evidence, those findings of fact are binding upon this Court for purposes of appellate review. *Id.*

■ First, Appellant argues that the use proposed by BVI is not a family group home as contemplated by Section 218(3) of the Ordinance, New Hope Borough Zoning Ordinance No. 1993–2, art. 1, § 1(3), because BVI is only providing housing for individuals infected with the HIV virus and is not creating a family living arrangement that is the functional equivalent of a traditional family. We note initially that a significant portion of Appellant's argument relative to this issue focuses on the expert testimony of Fred Wicks, Ph.D., a psychologist licensed to practice in the Commonwealth and who concentrates in family practice. However, the opinions offered by Dr. Wicks were rejected by the Zoning Hearing Board in performing its fact-finding function. Our limited scope of review forecloses our investigating that determination; thus, Dr. Wicks' testimony will not be considered anew by this Court on appeal.

Section 218(3) of the Ordinance defines the term "family" to include:

A home for *no more than eight unrelated persons* which is sponsored and operated by a *non-profit group, organization or corporation* for a group of persons to live together in a single communal living arrangement where the residents permanently live together as the *functional equivalent of a traditional family* in a *non-profit dwelling unit maintaining a non-transient common household with*

*single cooking and dining facilities and sharing a permanent unity of social life.* This shall be referred to as a "family group home". Groups contemplated by this use include, but are not limited to, the *handicapped, the elderly, and the disabled,*[2] but excludes halfway houses for ex-convicts and for drug or alcohol rehabilitation, or for licensed personal care homes or any other use specifically provided for in this Ordinance. A family group home may have *no more than two residential managers living at the home in addition to the residents.* Residential managers are agents or employees of the agency or organization sponsoring and operating the group home.

New Hope Borough Zoning Ordinance No. 1993–2, art. 1, § 1(3) (emphasis added).

Appellant argues that BVI will not be providing the residents of the subject property with personal care, attendant care, direct care, assistance in the giving and taking of medicines, contact with physicians to ensure compliance with physicians' orders, use of the telephone, and help with the laundry. Further, Appellant argues that the resident manager will not provide any hands-on care or on-site care for the residents, except in a crisis. Appellant also makes much of the leases signed by residents of the home, the fact that residents are charged rent each month, and the residents' ability to leave the home at their preference.

Appellant concludes that based on BVI's omission of these types of care, the contractual nature of the residents' stay in the home, and the residents' ability to leave the home at their preference, the Board erred in finding that the residents of the home will live as the functional equivalent of a traditional family.

In considering whether the residents of this home will "function" as a traditional family, we must be mindful of the undisputed fact that the residents of this home will all be over the age of eighteen and therefore have the legal status of adult citizens.

In the instant appeal, the Zoning Hearing Board concluded that the communal living arrangement proposed by BVI will be the functional equivalent of a traditional family. Specifically, the Zoning Hearing Board found:

19. The residents of the home will live together as the functional equivalent of a traditional family, the Board finds, for the following reasons:

(A) The resident manager will act as the "head of the household" in much the same way as a parent or parents, by *assisting in the planning and arranging of the activities of the group home and its residents; dispensing advice, establishing or implementing rules; assuming responsibility in emergency situations,* etc.;

(B) The residents will *share kitchen and dining facilities in a manner similar to a traditional family.* As in any such family with *adult members,* those members shall have an *option to cook or eat independently if they choose;*

(C) Each resident is *responsible for his own living quarters,* much as a family member is responsible for his or her own bedroom;

(D) *Common chores in the home will be shared by the residents* in a fashion similar to the sharing of chores in a family;

(E) *Residents will, if they choose, perform communal shopping, pool resources and designate one or more of their group to do the shopping,* in a fashion similar to a family;

(F) Residents will make a *choice as to the television to be watched and the music to be listened to,* presumably with the same amount of disagreement that exists as to these choices in a traditional family;

(G) *Common areas of the home are to be maintained by the residents,* in the same

---

**2.** The Ordinance requires that the residents of a family group home be, *inter alia,* disabled. In this case, the Zoning Hearing Board found that "the group to occupy the premises must all be ... victims of the HIV plus virus and are ... disabled within the meaning of the appropriate Statutes and Social Security Regulations...."

(Zoning Hearing Board Finding of Fact No. 13.) Appellant has not challenged this finding on appeal to this Court. Further, after a review of the record in this case, we conclude that there is substantial evidence to support this finding. (Notes of Testimony, 8/13/92, at 62–63.)

fashion as members of a family would maintain them.

(Zoning Hearing Board Opinion, dated December 1, 1994, at 4–5) (emphasis added). The Zoning Hearing Board also found that the residents of the home will have weekly meetings for the purpose of sharing information, news, and problems, and to resolve issues, concerns, or disagreements in the best interests of the group. (Zoning Hearing Board Finding of Fact No. 8.) This finding is based upon testimony accepted as credible by the Zoning Hearing Board. (Zoning Hearing Board Finding of Fact No. 12.)

■ We have thoroughly reviewed the entire record in this case. The testimony of Audrey Tucker, Executive Director of FSA who was qualified as an expert on family matters by the Zoning Hearing Board, and whose testimony was accepted as credible by the Zoning Hearing Board, supports the above-referenced findings of fact. Accordingly, those findings are binding upon this Court.

Appellant argues that the outcome of this case is controlled by this Court's decision in *Owens v. Zoning Hearing Board of Norristown,* 79 Pa.Cmwlth. 229, 468 A.2d 1195 (1983), wherein we held that a Borough may, in the exercise of its police power, prohibit "seven unrelated adults from residing together in a *commercial boarding house* situate in a single and two family residential district." *Id.,* 468 A.2d at 1197 (emphasis added). Appellant's reliance upon *Owens* is misplaced. In *Owens,* this Court recognized that a traditional nuclear family is characterized by a nurturing environment and concluded that a home operated by a profit-motivated operator vastly differed from that of quasi-nuclear families. *Id.* In the case *sub judice,* the group home does not have a profit motive. (Zoning Hearing Board Finding of Fact No. 12; N.T., 12/1/94, at 26). Moreover, unlike *Owens,* the Borough specifically adopted the Ordinance in question to allow for the use of the property as a family group home housing eight un-related persons and a residential manager. Therefore, our analysis in this case is confined to determining whether the living arrangement proposed by BVI conforms to the Ordinance.

Appellant also relies upon our Supreme Court's decision in *In re Appeal of Miller,* 511 Pa. 631, 515 A.2d 904 (1986), arguing that the facts of *Miller* provide no support for the granting of BVI's zoning permit because the property owner in *Miller* provided physical care for the residents, while BVI, admittedly, will not provide such physical care. We, however, in reviewing *Miller* do not find the provision of physical care the determinative factor to be considered.

In *Miller,* the Supreme Court held that owners of a house that took in boarders of various ages and physical or mental handicaps, notwithstanding the owner's receipt of $200.00 per month from some residents and the residents' lack of permanency, had established that the residents of the house lived together in a caring familial unit, and had satisfactorily met the definition of the term family. *Id.* Mr. Chief Justice Nix, writing for a unanimous Supreme Court, concluded that

> [d]uring the hearing before the Board, the appellant offered substantial evidence to establish a *caring familial unit.* The individuals *lived and cooked together* as a single housekeeping unit. The same furnishings were throughout the house and the *activities of the home were shared in by all occupants. Each occupant had access to all areas of the premises.* There was *only one kitchen, the meals were taken by all as a group at one sitting.* The group attended social and religious functions together and celebrated holidays jointly.

*Id.* at 638, 515 A.2d at 908 (emphasis added). Thus, the Supreme Court's decision in *Miller* turned on an examination of all of the facts to determine if the property owner established a caring, nurturing environment.

BVI's expert, Ms. Tucker, testified that there is some disagreement on the definition of "family," but sociologists generally agree that three characteristics found in a family are child rearing, affection, and companionship. (Notes of Testimony (N.T.), 12/1/94, at 29.) We conclude that these characteristics substantially conform with the Supreme Court's interpretation that the functional equivalent of a traditional family is a caring, nurturing unit. *Miller.*

Ms. Tucker testified that the "resident manager, in a sense, functions like the head of a household of a traditional home. The resident manager helps the un-related individuals form a cohesive group in planning and arranging activities within this group home." (*Id.* at 17.) While it is true that "the resident manager ... will not provide any on-site care or hands-on care....[,] if there is a crisis and an unexpected crisis, the resident manager will help out." (*Id.* at 24.)

Ms. Tucker further testified that residents of the home will share meals together, or, at their option, eat separately, much like a traditional family. The residents will also be responsible for caring for their living areas and will share responsibility for maintaining common areas, i.e., living room, dining room, kitchen and laundry facilities. (*Id.* at 19–21.) The residents of the home, "[j]ust as members of a traditional family share information and share news, share problems, ... will meet weekly ... to share information and common concerns with each other. (*Id.* at 23.)

Regarding the payment of monthly rent, the Supreme Court has held that such payment is not conclusive of a profit motive. *Miller.* Further, Ms. Tucker opined that it is common for adult members of a traditional family to contribute to the upkeep of the home. (N.T., 12/1/94, at 30.)

Regarding the "leases" signed by the residents of the home, Ms. Tucker made clear that these leases, while termed for one year, are indefinite leases that allow residents to live in the home as long as they choose, or until the individual is no longer able to live independently. (*Id.* at 25.) Ms. Tucker also opined that it is not uncommon for adult members of a traditional family to reside in the home for a period of time, leave, and return. (*Id.* at 31.) Such coming and going is permissible under *Miller,* because "the focus for this purpose should be directed to the quality of the relationship during the period of residency rather than its duration." *Miller,* 511 Pa. at 640, 515 A.2d at 909.

Ms. Tucker's overall opinion was that even though children will not be raised in the home, the group home in this case will exhibit the characteristics of affection and companionship common to a traditional family. (N.T., 12/1/94, at 30.)

Based on the Zoning Hearing Board's findings of fact and our review of the record, especially the credible testimony and expert opinions of Ms. Tucker, we conclude that the Zoning Hearing Board was correct in concluding that the residents of this group home will function as the equivalent of a traditional family, as defined in Section 218(3) of the Ordinance.

■ Appellant's second and third arguments go hand-in-hand, in that determination of the second issue requires a resolution of the third issue. In his third issue, Appellant argues that the home as renovated will not satisfy the requirements of a group home set forth in Section 218(3) of the Ordinance because the resident manager will actually be living in a separate apartment, and consequently will have limited access to the HIV-infected residents. In support of this issue, Appellant argues that the Board found that BVI "proposes to renovate the structure by creating eight (8) bedrooms and related bath facilities on the first floor, in addition to living, dining and kitchen facilities, *and an apartment or living unit (absent a kitchen facility) for a residential manager on the second floor.*" (Zoning Hearing Board Opinion, dated December 2, 1993, Finding of Fact No. 8) (emphasis added). Appellant also argues various evidentiary items support his position.

Section 202 of the Ordinance defines "apartment" as "[a] dwelling unit attached to other dwelling units by a common wall and/or ceiling/floor provided there are no less than three nor more than twelve dwelling units within any structure." A "dwelling unit" is defined in the Ordinance as "[a]ny room or group of rooms forming a single habitable unit with facilities which are used or intended to be used for living, sleeping, cooking and eating by one (1) family." Section 215 of the Ordinance. Based on these definitions, it cannot be said that the resident manager's living quarters would qualify as an apartment under the Ordinance because the Zoning Hearing Board found that these living quarters are not intended to contain cooking or

dining facilities; there is substantial evidence of record to support this finding.

While it is true that the Zoning Hearing Board found that the structure would include *separate living quarters for the residential manager,* the Ordinance requires, *inter alia,* that for the structure to be considered a group home, the structure must be a "dwelling unit ... with single cooking and dining facilities." Section 218(3) of the Ordinance. Because single cooking and dining facilities are determinative of whether there is a single dwelling unit or multiple dwelling units, and the structure in this case contains only single cooking and dining facilities, we conclude that the home as proposed constitutes a single dwelling unit as defined in this Ordinance.[3]

Based on the foregoing, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is affirmed.

### ORDER

**AND NOW,** this 14th day of February, 1996, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is **AFFIRMED.**

---

3.   Our resolution of this issue renders disposition of Appellant's second issue unnecessary.