Marcia Carnahan, Donald M. : 
Carnahan, Paul Boas, and : 
Christopher Coleman, : 
               Appellants : 
                : 
        v. : No. 1082 C.D. 2022
                : 
Slippery Rock Township Zoning : 
Hearing Board, Slippery Rock : 
Township, and Heilman Pavement : 
Specialties, Inc. : Submitted: October 10, 2023

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE CEISLER                             FILED: November 8, 2023

Appellants Marcia Carnahan, Donald M. Carnahan, Paul Boas, and Christopher Coleman (collectively Appellants) appeal from the Court of Common Pleas of Butler County's (Common Pleas) September 7, 2022 order. Through that order, Common Pleas affirmed Appellee Slippery Rock Township Zoning Hearing Board's (Zoning Board) November 22, 2021 decision (Decision), in which the Board had denied Appellants' substantive validity challenge to Slippery Rock Township (Township) Ordinance No. 2020-1.[1] We affirm.

## I. Background

On April 6, 2020, HEI-WAY Premium Asphalt (HEI-WAY)[2] filed an application with the Township's Board of Supervisors regarding a property located

---

[1] Slippery Rock Township, Butler County, Pa. Ordinance No. 2020-1 (2020).

[2] HEI-WAY was Appellee Heilman Pavement Specialties, Inc.'s (Heilman) predecessor-in-interest regarding the Property. Heilman's Br. at 6; *see* Common Pleas Op., 11/23/22, at 2.

at the intersection of Stoughton Road and New Castle Road in Slippery Rock, Pennsylvania (Property). Reproduced Record (R.R.) at 1a-2a, 229a.[3]

> [The Property] is a relatively large parcel as compared to its residentially[ ]zoned neighbors, comprising 14.52 acres, and is rectangular in shape, with the longer, parallel boundary lines arranged, roughly, in a north/south direction, and the shorter boundary sides arranged, again roughly, in an east/west direction. [*Id.* at 242a]. The property is bisected by the Slippery Rock Township and Worth Township boundary line, into approximately two triangles, such that the eastern/northeastern portion of the property is located within Slippery Rock Township, and the western/southwestern portion is located within Worth Township. [*Id.* at 242a; Supplemental Reproduced Record (S.R.R.) at 291a[4]].

Common Pleas Op., 11/23/22, at 2. In its application, HEI-WAY listed its proposed use for the Property as "[c]ommercial development for [c]old-mix asphalt plant with product storage and associated facilities including scale(s) and scale house[,]" and requested that the Board of Supervisors rezone the Property from RC-1 Rural Conservation to L-I Light Industrial. R.R. at 1a.[5] On May 11, 2020, the Township's Planning Commission voted unanimously to recommend that the Board of Supervisors rezone as Light Industrial both the Property and two nearby parcels of land. *Id.* at 4a. The Board of Supervisors then held a public hearing on June 8, 2020, regarding the proposed zoning changes and, on June 22, 2022, enacted Ordinance

---

[3] The Property's street address is listed in different portions of the Reproduced Record as 661 New Castle Road and 490 Stoughton Road. *See* R.R. at 1a-2a, 229a.

[4] This document is not a true supplemental reproduced record, as it was submitted by Appellants as an addendum to their Reproduced Record. However, for simplicity's sake, we will refer to it as such, because that is how Appellants elected to title their filing.

[5] At that point in time, the Property was owned by Glen and Ruth Cooper, while HEI-WAY was merely the Property's proposed buyer. R.R. at 1a. HEI-WAY ultimately completed its purchase of the Property on August 8, 2020. Heilman's Br. at 5.

No. 2020-1, which changed the zoning classification of those three lots from Rural Conservation to Light Industrial. *Id.* at 35a-36a; S.R.R. at 264a-303a.

Thereafter, on September 8, 2021, Appellants filed their substantive validity challenge to Ordinance No. 2020-1, but only as to its effect upon the Property. *See* R.R. at 65a-67a. The Zoning Board held a hearing regarding Appellants' challenge on October 27, 2021, and, after considering the parties' respective arguments and evidentiary submissions, denied the challenge on November 22, 2021. Appellants then appealed this denial to Common Pleas, which took no additional evidence and, on September 7, 2022, affirmed the Board's Decision, in full. This appeal to our Court followed shortly thereafter.

## II. Discussion

Preliminarily, we must address Heilman's argument that Paul Boas does not have standing to maintain the instant appeal. Heilman's Br. at 16-20. Heilman moved to challenge Boas' standing during the course of the Zoning Board's October 27, 2021 hearing, and though the Zoning Board stated in its Decision that "[b]ased on the testimony given in this matter by Boas, [it did] not believe he [met] the standard for being a [p]arty," the Zoning Board nevertheless declined to grant Heilman's motion. Decision at 6-7. Heilman then reiterated its challenge to Boas' standing during the course of appellate proceedings before Common Pleas, but Common Pleas denied that challenge without explanation. *See* Common Pleas Order, 9/7/22, at 2. As a prevailing party that was not ultimately aggrieved by either the Zoning Board's Decision or Common Pleas' subsequent order, Heilman was not required to file a protective cross-appeal in order to preserve this issue for consideration at a later juncture. *See McGuire on behalf of Neidig v. City of Pittsburgh*, 250 A.3d 516, 526 (Pa. Cmwlth. 2021); *Lebanon Valley Farmers Bank v. Com.*, 83 A.3d 107, 112-13 (Pa. 2013); *but see Firearm Owners Against Crime v.*

3

*Papenfuse*, 261 A.3d 467, 476 nn. 8 & 13 (Pa. 2021) (appellees waived ability to challenge determination that they lacked standing regarding certain claims due to their failure to file cross-appeal).

In order to have standing, a party must be "aggrieved," in that the party must have an interest in the matter that is substantial, direct, and immediate. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 282-83 (Pa. 1975).

> A substantial interest is one in which there is "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *William Penn*, . . . 346 A.2d at 282. A "direct" interest requires a showing that the matter complained of causes harm to the party's interest. *Upper Bucks* [*Cnty.*] *Vocational–Technical* [*Sch. Educ. Ass'n*] *v. Upper Bucks* [*Cnty.*] *Vocational-Technical School Joint Comm*[.], . . . 474 A.2d 1120 ([Pa.] 1984). An "immediate" interest is something more than a "remote consequence" and centers on the causal nexus and proximity between the action complained of and the injury to the party challenging it. *William Penn*, . . . 346 A.2d at 283; *Skippack* [*Cmty.*] *Ambulance* [*Ass'n*]*, Inc. v.* [*Twp.*] *of Skippack*, . . . 534 A.2d 563 ([Pa. Cmwlth.] 1987). The requirement that the interest be "immediate" is also met where it falls within the "zone of interests sought to be protected by the statute or constitutional guarantee in question." *Upper Bucks* [*Cnty.*], . . . 474 A.2d at 1122. Finally, the rationale underlying the requirement that the party be "aggrieved" or "adversely affected" by the action at issue is to ensure that a legal challenge is made by the appropriate party.

*Pittsburgh Tr. for Cultural Res. v. Zoning Bd. of Adjustment of City of Pittsburgh*, 604 A.2d 298, 303-04 (Pa. Cmwlth. 1992). "[A] party who appears before a zoning board may only appeal an adverse decision to court if that party has standing per this . . . traditional understanding of the concept." *S. Bethlehem Assocs., LP v. Zoning Hearing Bd. of Bethlehem Twp.*, 294 A.3d 441, 448 (Pa. 2023); *see* Section 916.1(b)

4

of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10916.1(b)[6] ("Persons aggrieved by a use or development permitted on the land of another by an ordinance or map, or any provision thereof, who desires to challenge its validity on substantive grounds shall first submit their challenge to the zoning hearing board for a decision thereon under [S]ection 909.1(a)(1) [of the MPC[7]]."); 2 Pa. C.S. § 752 ("Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).").

> A key component of the *William Penn* standing analysis, and whether an objector is "aggrieved" for purposes of the MPC, is whether the proposed use in question, or, in a substantive validity challenge, the challenged ordinance, actually causes the injury complained of by the objector. *William Penn*, 346 A.2d at 282; *see also Worthington* [*v. Mount Pleasant Twp.*], 212 A.3d 582, 593 (Pa. Cmwlth. 2019)] ("theoretical concerns do not satisfy the legal requirement that [the objector] have a substantial, direct, and immediate interest to have standing"); *Laughman* [*v. Zoning Hearing Bd. of Newberry Twp.*, 964 A.2d 19, 23 (Pa. Cmwlth. 2009)] (a mere concern of remote consequences is not direct because all citizens share concerns regarding traffic and safety).

*Lodge v. Robinson Twp. Zoning Hearing Bd.*, 283 A.3d 910, 926 (Pa. Cmwlth. 2022).

In this instance,[8] Boas testified before the Zoning Board that he resides along Slippery Rock Creek, "about seven or eight miles" from the Property. R.R. at 167a.

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by Act of December 21, 1988, P.L. 1329.

[7] Added by Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a)(1).

[8] The relevant case law offers conflicting guidance regarding the proper standard of review regarding standing in zoning matters. In *Lodge*, we stated that an appellate court is bound by the

**(Footnote continued on next page…)**

5

Boas' residence is thus not in close proximity to the Property and its location, standing alone, cannot support a determination that he has standing in this matter. *See Laughman*, 964 A.2d at 22. Boas also stated that he is an avid kayaker who regularly spends time on the Creek, which abuts the Property, often passes by the Property while kayaking to-and-from his home downstream, and is concerned that pollution from the proposed cold-mix asphalt plant (whose placement on the Property would not be allowed absent the Property's rezoning) will negatively affect his ability to use and enjoy the Creek. *See* R.R. at 167a-71a. Such concerns, however, are merely speculative at this juncture, and cannot serve as a basis for conferring standing upon him. *Worthington*, 212 A.3d at 593. Consequently, we conclude that Boas was not aggrieved in this instance and dismiss him from this matter for lack of standing.

With that question resolved, we now turn to the substance of the arguments posed by Marcia Carnahan, Donald M. Carnahan, and Christopher Coleman

---

credibility and evidentiary weight determinations made by the factfinder regarding an individual's standing and, thus, is limited to applying a narrow abuse of discretion and error of law standard of review to such a determination. 283 A.3d at 925-26. However, more recently in *South Bethlehem*, the Supreme Court noted that "[s]tanding exists as a jurisprudential doctrine to protect the courts and the public from improper plaintiffs" and went on to "find" that the appellant in that matter lacked standing to appeal an adverse zoning ruling, due to his failure to articulate a substantial, direct, and immediate interest in the outcome of that ruling, without expressing any apparent deference to the factfinder. *See* 294 A.3d at 446-48. Given the Supreme Court's treatment of standing in *South Bethlehem*, as well as its observations in other cases that "[s]tanding is a justiciability concern, implicating a court's ability to adjudicate a matter[,]"*Papenfuse*, 261 A.3d at 481, and that "[j]usticiability questions are issues of law, over which our standard of review is *de novo* and the scope of review is plenary[,]" *Robinson Township, Washington County v. Commonwealth of Pennsylvania*, 83 A.3d 901, 917 (Pa. 2013), we conclude that *Lodge* is not consistent with Supreme Court precedent in the context of standing. This is somewhat of an academic point here, though, because the Board also effectively found that Boas lacked standing, despite its ultimate failure to grant Heilman's motion.

(Remaining Appellants).[9] As they did when before the Zoning Board and Common Pleas, Remaining Appellants assert that Ordinance No. 2020-1 is substantively invalid with regard to the Property because the Ordinance (a) had spot zoned the Property; (b) violated article I, section 27 of the Pennsylvania Constitution,[10] otherwise known as the Environmental Rights Amendment; (c) contravened the development objectives laid out in the Township's Zoning Ordinance[11] and Butler County's comprehensive plan; and (d) would both harm the public health, safety, and welfare and potentially create a private nuisance. Appellants' Br. at 38-59. Accordingly, Remaining Appellants maintain that the Zoning Board abused its discretion and committed errors of law by denying their challenge to Ordinance No. 2020-1. *Id.* at 38.

---

[9] As Common Pleas took no additional evidence in this instance, our standard of review is restricted to determining whether the Zoning Board committed an abuse of discretion or an error of law in this matter. *Penn St., L.P. v. E. Lampeter Twp. Zoning Hearing Bd.*, 84 A.3d 1114, 1119 n.4 (Pa. Cmwlth. 2014). "We may conclude that the [Zoning] Board abused its discretion only if its findings are not supported by substantial evidence. . . . By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983). (citations omitted).

In light of this limited standard of review, we must avoid the inclination to measure and assess the multitude of factors and considerations that support a zoning ruling, and "must exercise self-restraint as to substituting our opinions far removed from the particular zoning hearing for the well-considered decision of [the Zoning Board]." *Cohen v. Zoning Bd. of Adjustment of City of Phila.*, 276 A.2d 352, 355 (Pa. Cmwlth. 1971). "It is, after all, the sole function of the [Zoning] Board, in the performance of its role as fact[]finder, to evaluate witness credibility and assign evidentiary weight." *Lower Allen Citizens Action Grp., Inc. v. Lower Allen Twp. Zoning Hearing Bd.*, 500 A.2d 1253, 1258 (Pa. Cmwlth. 1985) (punctuation omitted). Indeed, the "Zoning . . . Board as fact[]finder is the ultimate judge of credibility and resolves all conflicts in the evidence," *Eichlin v. Zoning Hearing Board of New Hope Borough*, 671 A.2d 1173, 1175 (Pa. Cmwlth. 1996), and has "the power to reject even un-contradicted testimony if it finds it lacking in credibility." *Lower Allen*, 500 A.2d at 1258.

[10] PA. CONST. art. I, § 27.

[11] Zoning Ordinance of the Township of Slippery Rock, Butler County, Pa., *as amended* (2017).

A zoning ordinance is valid when it promotes public health, safety or welfare, and its regulations are substantially related to the purpose the ordinance purports to serve. *Boundary Drive Assocs. v. Shrewsbury Twp. Bd. of [Sup'rs]*, . . . 491 A.2d 86 ([Pa.] 1985) (citing *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, . . . (1926)). A validity challenge generally attacks zoning on substantive due process grounds, *i.e.*, whether an ordinance is substantially related to a legitimate interest. *Springwood Dev. Partners, L.P. v. Bd. of [Sup'rs] of N. Cornwall Twp.*, 985 A.2d 298 (Pa. Cmwlth. 2009).

In Pennsylvania, the constitutionality of a zoning ordinance is reviewed under a substantive due process analysis. *McGonigle v. L. Heidelberg Twp. Zoning Hearing Bd.*, 858 A.2d 663 (Pa. Cmwlth. 2004). Under such analysis, the party challenging the validity of provisions of the zoning ordinance must establish that they are arbitrary and unreasonable and have no substantial relationship to promoting the public health, safety and welfare. *Id.*; *see also Open Pantry Food Marts v. Twp. of Hempfield*, . . . 391 A.2d 20 ([Pa. Cmwlth.] 1978) (court may declare an ordinance to be an invalid exercise of the police power only where it is proven that its provisions are clearly unreasonable and have no relation to public safety).

. . . .

Before a reviewing tribunal may declare a zoning ordinance unconstitutional, the challenging party must clearly establish the provisions of the ordinance are arbitrary and unreasonable. *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469 (Pa. Cmwlth. 2006). . . . A legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such a manner as to leave no doubt or hesitation in the mind of the court. *Id.* Indeed, "[w]here the validity of an ordinance is debatable, the ordinance will be upheld as valid, and if there is room for difference of opinion as to whether the ordinance is designed to serve a proper public purpose, the court should not substitute its judgment for that of the governing body which enacted the legislation." *Trigona v. Lender*, 926 A.2d 1226, 1233 (Pa. Cmwlth. 2007) . . . (citing *Bilbar Constr. Co. v. Bd. of Adjustment of Easttown Twp.*, . . . 141 A.2d 851 (Pa. 1958)).

*Plaxton v. Lycoming Cnty. Zoning Hearing Bd.*, 986 A.2d 199, 205 (Pa. Cmwlth. 2009).

As for spot zoning in particular, substantive validity

> challenges [of that nature] have at their conceptual core the principle that lawful zoning must be directed toward the community as a whole, concerned with the public interest generally, and justified by a balancing of community costs and benefits. These considerations have been summarized as requiring that zoning be in conformance with a comprehensive plan for the growth and development of the community. Spot zoning is the antithesis of lawful zoning in this sense. In spot zoning, the legislative focus narrows to a single property and the costs and benefits to be balanced are those of particular property owners.

> In *Appeal of Mulac*, . . . 210 A.2d 275, 277 (Pa.] 1965), we [defined] "spot zoning" . . . "as a singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment is invalid 'spot' zoning." Viewed more generally, "spot zoning . . . is an arbitrary exercise of police powers that is prohibited by our Constitution." *United Artists' Theater Circuit, Inc. v. City of Philadelphia*, . . . 635 A.2d 612, 620 ([Pa.] 1993).

> While the size of the zoned tract is a relevant factor in a spot zoning challenge, "the most important factor in an analysis of a spot zoning question is whether the rezoned land is being treated unjustifiably different from similar surrounding land." *Schubach v. Silver*, . . . 336 A.2d 328, 336 ([Pa.] 1975).

*In re Realen Valley Forge Greenes Assocs.*, 838 A.2d 718, 729 (Pa. 2003). For a substantive validity challenge based upon an allegation of spot zoning to be successful, the challenger must prove that the contested ordinance treats a parcel of land differently than "surrounding land [that is] similar in character[,]" as well as "that the provisions at issue are arbitrary and unreasonable and that they have no relation to the public health, safety, morals, and general welfare." *Conshohocken*

*Borough v. Conshohocken Borough Zoning Hearing Bd.*, 261 A.3d 582, 596 (Pa. Cmwlth. 2021). As concerns regarding an ordinance's effect upon the public health, safety, and welfare are part of the spot zoning analysis, we will address Remaining Appellants' first and fourth arguments in tandem.

In denying Appellants' spot zoning challenge and concluding that Ordinance No. 2020-1 did not endanger the public health, safety, and welfare, the Zoning Board found, in relevant part:

> 11. The evidence . . . establishes that the . . . Property is and was before 2020 adjoined by a parcel that was zoned Light Industrial. In addition, the evidence establishes that the . . . Property was rezoned along with two other parcels, which have been used for salvage yard operations and which adjoin the same Light Industrial parcel as the . . . Property, so that the effect of the rezoning was to expand the Light Industrial [z]one to accommodate existing and proposed uses. In addition, the evidence establishes that the . . . Property was given a zoning classification that was consistent with the uses of adjacent properties which include a concrete products manufacturing plant, a salvage yard, and a large mining operation.
>
> . . . .
>
> 13. Under these circumstances where the rezoned property is combined with other previously Light Industrial[-]zoned property, and is being permitted to be used in a manner consistent with existing surrounding uses of land, . . . the change of the zoning classification to Light Industrial for the . . . Property did not constitute improper [s]pot [z]oning.
>
> . . . .
>
> 20. Although there was evidence presented by residents of the area regarding their fears and concerns about how Light Industrial uses, or the proposed cold[-]mix asphalt facility might harm the neighboring property owners and citizens by creating increased industrial and truck traffic noise and odors, by causing environmental hazards by release of hazardous chemicals and substances during the course of the industrial operations that would pollute the

Slippery Rock Creek and cause harm to aquatic and wild life in the area, and cause health risks to neighbors, there was no scientific or substantive evidence presented to demonstrate that such uses including the proposed cold[-] mix asphalt facility would cause such harms. In addition, there is no evidence, or suggestion, that the uses permitted in the Light Industrial [z]oning [d]istricts in other areas of [the] Township[,] or elsewhere, are dangerous to the health, safety and welfare of the citizens such they should not be permitted.

21. For the above reasons, the [Zoning] Board concludes that there was insufficient evidence to establish that the health and safety of Township residents would be harmed by the change of the zoning classification for the . . . Property.

. . . .

23. Although the zoning change was prompted by a single company making the request for purposes of accommodating that company's proposed use, there was no direct evidence supporting a conclusion that the change would not have been granted if proposed by any other person, or that that company would be granted the permits for its proposed use. The [Zoning] Board finds that there is no evidence that the Board of Supervisors was acting solely to benefit a single business entity to the exclusion of others. Accordingly, the [Zoning] Board concludes there is no basis to overturn the action to rezone the . . . Property on this basis.

Decision, Findings of Fact and Conclusions of Law (F.F. & C.L.) ¶¶11, 13, 20-21, 23. As cogently explained by Common Pleas, these determinations find ample support in the record:

Directly to the south of the subject parcel, in Worth Township, is property owned by Allegheny Mineral Corporation, which is mined for limestone. [R.R. at 242a]. Situate[d] directly to the west of the subject parcel, also in Worth Township, is property owned by Sidley R.W. Inc., on which is operated a concrete plant. [*Id.*] Located directly to the northwest and situate in both Worth and Slippery Rock Townships is property owned by SAC Citrus, Inc., which is utilized as a car wash. [*Id.*] Finally, to the north/northeast of the property, yet not quite

11

abutting the subject parcel, are the two parcels owned by PCS Metals, Inc., that were also rezoned Light Industrial per Slippery Rock Township Ordinance No. 2020-1. These two properties are utilized as a scrap yard.

Christopher Coleman and Marcia Carnahan were among a number of residents who testified before the Zoning . . . Board as to the general nature of the area and the properties surrounding the subject parcel. Christopher Coleman testified that he lives approximately 250 to 300 yards from the subject property. [R.R. at 143a, 153a]. He also lives [50] yards away from the Sidley R.W. Inc., concrete production plant. [*Id.* at 153a-54a]. One parcel of property separates his property from the concrete plant. [*Id.* at 154a]. He can look out of his kitchen window and see the entire operation. [*Id.* at 156a]. The PSC Metals, Inc., scrap yard is located 500 to 600 yards from his property. [*Id.* at 159a-60a]. He further testified the limestone quarry operated by Allegheny Mineral Corporation lies to the east and slightly down Stoughton Road from Marcia Carnahan's property. [*Id.* at 160a, 162a]. Marcia Carnahan testified that the PSC Metals, Inc., "junkyard" has existed across the street from her house since 1978 through the present. [*Id.* at 121a, 135a]. She further testified that the area is not quiet, [*id.* at 117a], and that, "we have trucks coming in and out and we also have the highway on [Route] 108/New Castle Road." [*Id.* at 134a]. The trucks enter and leave from the limestone quarry owned and operated by Allegheny Mineral Corporation. [*Id.* at 102a; *see also* S.R.R. at 277a] (similar testimony as to adjacent property uses). During the June 8, 2020[] Board of Supervisors hearing, resident Dennis Allen testified that the limestone trucks pass right by the subject property. [S.R.R. at 280a].

Thus, the evidence before the Zoning . . . Board established that the uses of the properties immediately abutting three of the four sides of the subject parcel are industrial in nature, and that the area already sustains heavy industrial truck use. Additionally, the PSC Metals, Inc., properties, while not abutting the subject property, are also utilized for industrial ventures. . . .

With regard to the issue of whether the decision to rezone the subject property was arbitrary or unreasonable, during the June 8, 2020 . . . Board of Supervisors public hearing,

12

Chairman Paul A. Dickey noted that the Supervisors' reasoning for including the two PSC Metals, Inc., parcels in the zoning map change stemmed from these properties having inadvertently and erroneously not been labeled as Light Industrial on the previous zoning map, stating,

> [It was the intention of the Planning Commission and Supervisors to have the . . .] PSC Metals [properties] as [sic] industrial and somehow it got mislabeled on the map. That was the whole point in having the industrial site up there, is because that facility was there when zoning was enacted. And until [recently], we all believed that the [PSC] Metals [properties were zoned] Light Industrial.

[S.R.R. at 278a]. Also during said meeting, when asked by a township resident as to what benefit the rezoning would bring to the [T]ownship, Tracy Frampton, Chairman of the [Township's] Planning Commission, testified as follows. First, he noted that the Planning Commission recognized that there exist few industrial uses throughout the entire Township. [S.R.R. at 281a]. He further noted that the Planning Commission (recognizing that a portion of the subject property lies in Worth Township) considered that one of the abutting properties in Worth Township, the cement factory, has been in industrial use for [60] years or more. [*Id.*] He testified that the Planning Commission reviewed aerial photos of the region, and considered that industrial uses were already "bleeding" into the area. He stated the subject parcel appeared to be part of a complex already served by access roads. [*Id.* at 281a-82a].

The above evidence demonstrates that pre[]existing conditions prompted the placement of the [L]ight [I]ndustrial zone in the northwestern area of the Township where the [Property] is located, that there exists very little light industrial use in the entire Township, that the area wherein the subject parcel lies is already supporting industrial traffic and industrial uses, and that the subject property is currently served by access roads that will support an industrial use. . . .

During the June 8, 2020[] Board of Supervisors[] hearing, residents expressed concern about possible pollution from the proposed cold-mix plant. Scott Foreman, an engineer with HEI-WAY, testified as to the differences between a hot[-]mix asphalt plant and a cold[-]mix asphalt plant. He

13

testified that the proposed cold[-]mix asphalt plant is considerably different from a hot[-]mix plant, as it is much smaller, roughly 10 feet by 45 feet, and does not use heat; therefore, it does not need or utilize any smokestacks. [*Id.* at 293a, 301a]. Mark Lazzari, [the Township's] Assistant Zoning Officer, noted that special exceptions to zoning ordinances (a cold[-]mix asphalt plant being a special exception in a [L]ight [I]ndustrial zone) must meet specific performance and development standards, which standards address fire protection, electric disturbances, noise, odors, and air pollution, and that any application for a special exception for the cold[-]mix asphalt plant would have to meet these standards prior to approval. [*Id.* at 294a-96a]. He further testified that there exist zoning regulations that can be utilized to minimize impacts on residential properties, such as setbacks and screenings. [*Id.* at 296a].

Common Pleas Op., 11/23/22, at 6-10. Furthermore, as the sole arbiter of witness credibility and evidentiary weight, the Zoning Board was operating well within its discretion when it deemed Appellants' testimony unpersuasive regarding the potential impact of the Property's rezoning. *Eichlin*, 671 A.2d at 1175; *Lower Allen*, 500 A.2d at 1258.

Remaining Appellants also assert, in the context of this argument, that Ordinance 2020-1 will harm the public health, safety, and welfare, because the Property's rezoning "may" eventually result in the creation of a public nuisance if and when a cold-mix asphalt plant is erected thereon. Appellants' Br. at 56-59.

> The courts of the Commonwealth follow the description of private nuisance developed in the Restatement (Second) of Torts. Private nuisances are "nontrespassory invasion[s] of another's interest in the private use and enjoyment of land." 4 Restatement Torts, 2d, § 821D, p. 100. [Am. Law. Inst. 1979.]
>
> Section 822 of the Restatement sets forth the elements of liability for private nuisance as follows:
>
> > One is subject to liability for private nuisance if, but only if, his conduct is a legal cause of an invasion

14

of another's interest in the private use and enjoyment of land, and the invasion is either:

>> (a) intentional and unreasonable, or

>> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

> [Restatement (Second) of Torts § 822 (Am. Law Inst. 1979)]. In evaluating a private nuisance claim, the key question is whether one person has impaired another person's private right of use or enjoyment of their land. The Restatement indicates that []any one of the types of conduct that serve in general as the bases for all tort liability may invade a person's private right of use or enjoyment of their land.[ *Id.*] A defendant may be liable for the invasion of such use and enjoyment when the interference is intentional and unreasonable or the result of negligent, reckless or abnormally dangerous conduct. *Id.*

*Diess v. Pa. Dep't of Transp.*, 935 A.2d 895, 905 (Pa. Cmwlth. 2007) (cleaned up).

In order "to restrain a threatened nuisance it must clearly appear that a nuisance will necessarily result from a contemplated act which it is sought to enjoin." *Kelly v. City of Phila.*, 115 A.2d 238, 241 (Pa. 1955).

> Where [relief] is sought [regarding] an anticipated nuisance, it must be shown (a) that the proposed construction or the use to be made of property will be a nuisance *per se*; (b) or that, while it may not amount to a nuisance *per se*, under the circumstances of the case a nuisance must necessarily result from the contemplated act or thing. The injury must be actually threatened, not merely anticipated; it must be practically certain, not merely probable.

*Pa. Co. for Ins. on Lives & Granting Annuities v. Sun Co.*, 138 A. 909, 912 (Pa. 1927).

Remaining Appellants do not dispute that a private nuisance does not exist at this point; instead, they only raise *prospective* concerns about the *potential* harm that

*might* result if a cold-mix asphalt plant is built on the Property. Moreover, Remaining Appellants' implicit argument that Ordinance No. 2020-1 will *itself* potentially create a private nuisance is incorrect. Even if a private nuisance eventually comes into existence, it would not be directly attributable to the Property's rezoning; rather, any such nuisance would be spawned by the precise manner in which the Property is or will be used, not by the predicate zoning change. *See Diess*, 935 A.2d at 905 (a private nuisance results from nontrespassory conduct that impairs another person's use and enjoyment of their land). In other words, Remaining Appellants' private nuisance argument is far too speculative and attenuated at this juncture to be viable.

Thus, in sum, the Zoning Board did not abuse its discretion or commit an error of law when it rejected Appellants' spot zoning challenge. There is substantial evidence to support its determinations that Ordinance No. 2020-1 did not treat the Property differently than similar, surrounding parcels of land, was not arbitrary or unreasonable, and did not pose a threat to the public health, safety, and welfare. Remaining Appellants' first and fourth arguments are therefore without merit.

Moving on to Remaining Appellants' second argument, the Environmental Rights Amendment reads as follows:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, § 27.

> This constitutional provision grants two separate rights to the people of this Commonwealth. The first right is contained in the first sentence, which is a prohibitory clause declaring the right of citizens to clean air and pure water, and to the preservation of natural, scenic, historic

16

and esthetic values of the environment. This clause places a limitation on the state's power to act contrary to this right, and while the subject of this right may be amenable to regulation, any laws that unreasonably impair the right are unconstitutional.

The second right reserved by [the Environmental Rights Amendment], set forth in its second sentence, is the common ownership by the people, including future generations, of Pennsylvania's public natural resources.

. . . .

The third clause of [the Environmental Rights Amendment] establishes a public trust, pursuant to which the natural resources are the corpus of the trust, the Commonwealth is the trustee, and the people are the named beneficiaries.

*Pa. Env't Def. Found. v. Com.*, 161 A.3d 911, 931-32 (Pa. 2017) (citations and footnote omitted). Thus, the Commonwealth, as trustee, has a fiduciary obligation

to comply with the terms of the trust and with standards governing a fiduciary's conduct. The explicit terms of the trust require the government to "conserve and maintain" the corpus of the trust. *See* PA. CONST. art. I, § 27. The plain meaning of the terms conserve and maintain implicates a duty to prevent and remedy the degradation, diminution, or depletion of our public natural resources. As a fiduciary, the Commonwealth has a duty to act toward the corpus of the trust—the public natural resources—with prudence, loyalty, and impartiality.

*Id.* at 932 (quoting *Robinson Twp*, 83 A.3d at 956-57). The term "Commonwealth," as used here, "encompasses all agencies and entities of the Commonwealth government, both statewide and local," meaning that each one has "a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality." *Id.* at 928 n.23.

Our Supreme Court, referencing Pennsylvania trust law, has determined that the Environmental Rights Amendment

imposes two basic duties on the Commonwealth as the trustee. First, the Commonwealth has a duty to prohibit the degradation, diminution, and depletion of our public natural resources, whether these harms might result from

17

direct state action or from the actions of private parties. Second, the Commonwealth must act affirmatively via legislative action to protect the environment. Although a trustee is empowered to exercise discretion with respect to the proper treatment of the corpus of the trust, that discretion is limited by the purpose of the trust and the trustee's fiduciary duties, and does not equate to mere subjective judgment.

*Id.* at 932-33. Consequently, the Township, as a local component of our Commonwealth's government, must act in accordance with these duties as trustee of the environment and the public natural resources within its domain. Furthermore, the Township must pursue "not only reactive but also anticipatory protection of the environment [and public natural resources] for the benefit of current and future generations." *Id.* at 919 (quoting *Robinson Twp.*, 83 A.3d at 963); *see id.* at 931 ("The second right reserved by [the Environmental Rights Amendment], set forth in its second sentence, is the common ownership by the people, including future generations, of Pennsylvania's public natural resources."); *Robinson Twp.*, 83 A.3d at 959.[12]

Remaining Appellants' assertion that Ordinance No. 2020-1 violates the Environmental Rights Amendment is unviable for largely the same reasons that its aforementioned spot zoning allegations cannot carry the day. In their brief, Remaining Appellants argue that

> [p]ermitting an incompatible, "Island of Industry" to benefit one particular developer in this community with zero considerations of health, safety, quiet enjoyment,

---

[12] Within the public trust paradigm of [the Environmental Rights Amendment], the beneficiaries of the trust are 'all the people' of Pennsylvania, including generations yet to come. The trust's beneficiary designation has two obvious implications: first, the trustee has an obligation to deal impartially with all beneficiaries and, second, the trustee has an obligation to balance the interests of present and future beneficiaries.

*Robinson Twp.*, 83 A.3d at 959.

18

property values, community welfare, air quality, water quality, noise, either citied comprehensive plan, etc. is not an action of a reasonably prudent trustee, is penny wise and dollar foolish and is the action of a "mere proprietor" of the people's natural resources, which in the Commonwealth of Pennsylvania is clearly unconstitutional.

Appellants' Br. at 52-53. As already mentioned, though, there is substantial evidence in the record that supports the Zoning Board's determinations that the Property was not treated differently than similar, surrounding parcels of land, many of which were either already zoned for or used for Light Industrial purposes, as well as that rezoning the Property did not pose a threat to the public health, safety, and welfare. In addition, the Zoning Board specifically rejected Appellants' Environmental Rights Amendment-based claim, ruling:

15. The evidence presented [by Appellants] consisted of speculation and nothing more than personal opinions based on various experiences and conjecture. It did not establish substantive or scientific evidence of environmental harm that may befall the area as a result of the cold[-]mix asphalt facility, or of any other industrial use that might be permitted in a Light Industrial [z]one. Furthermore, the impact of any proposed use in the Light Industrial [z]one that requires a [s]pecial [e]xception to be permitted, such as the cold[-]mix asphalt facility, is subject to an examination of its potential environmental hazards in conjunction with the special exception proceeding.

Decision, F.F. & C.L. ¶15. Given the evidence of record and the Zoning Board's broad latitude regarding witness credibility and evidentiary weight determinations, we see no basis for disturbing its conclusion that Ordinance No. 2020-1 does not violate the Environmental Rights Amendment.

Finally, Remaining Appellants' third argument is, to reiterate, that Ordinance No. 2020-1 is inconsistent with the development objectives articulated in the Township's Zoning Ordinance and Butler County's comprehensive plan. Remaining

Appellants quote part of Section 102 of the Zoning Ordinance and highlight that it states that one of the Zoning Ordinance's purposes is "[t]o preserve prime agriculture and farmland considering topography, soil type and classification and present use." Zoning Ordinance § 102.C.; *see* Appellants' Br. at 53-54. Remaining Appellants, however, provide no legal analysis whatsoever regarding this purported clash between the Zoning Ordinance and Ordinance No. 2020-1. Of even greater concern, they misleadingly omit another part of Section 102, which provides that the Zoning Ordinance is also designed "[t]o accommodate reasonable overall community growth, including population and employment growth and opportunities for development of a variety of residential dwelling types and nonresidential uses." Zoning Ordinance § 102.E. Facilitating the Property's development by rezoning it as Light Industrial, *i.e.*, a nonresidential use, certainly comports with the language used in Section 102.E. As for Butler County's comprehensive plan, it is well settled that, though this type of

> plan is a useful tool for properly guiding growth and development of the community, it is only intermediate and inconclusive steps in the land use planning. Unlike a specific and regulatory zoning ordinance, a comprehensive plan is, by its nature, an abstract recommendation as to desirable approaches to land utilization and development of the community.

*CACO Three, Inc. v. Bd. of Sup'rs of Huntington Twp.*, 845 A.2d 991, 995 (Pa. Cmwlth. 2004). As such, a substantive validity challenge cannot be brought against a zoning ordinance on the basis of its alleged incompatibility with a comprehensive plan. *Briar Meadows Dev., Inc. v. S. Ctr. Twp. Bd. of Sup'rs*, 2 A.3d 1303, 1307 (Pa. Cmwlth. 2010); *see* Section 303(c) of the MPC, 53 P.S. § 10303(c) ("Notwithstanding any other provision of [the MPC], no action by the governing body of a municipality shall be invalid nor shall the same be subject to challenge or appeal on the basis that such action is inconsistent with, or fails to comply with, the

20

provision of a comprehensive plan."). Thus, Remaining Appellants' third argument is utterly baseless.

### III. Conclusion

In light of the foregoing analysis, we affirm Common Pleas' September 7, 2022 order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marcia Carnahan, Donald M.                    :
Carnahan, Paul Boas, and                      :
Christopher Coleman,                          :
              Appellants                 :
                                          :
      v.                              :   No. 1082 C.D. 2022
                                          :
Slippery Rock Township Zoning                 :
Hearing Board, Slippery Rock                  :
Township, and Heilman Pavement                :
Specialties, Inc.                             :

## **O R D E R**

AND NOW, this 8th day of November, 2023, it is hereby ORDERED that the Court of Common Pleas of Butler County's September 7, 2022 order is AFFIRMED.

                    _____
                    ELLEN CEISLER, Judge